*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEJUAN DERAY LUMPKINS,

        Defendant-Appellant.

UNPUBLISHED
May 14, 2020

No. 346040
Wayne Circuit Court
LC No. 18-002604-01-FC

Before: JANSEN, P.J., and METER and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree felony murder, MCL 750.316(1)(b), armed robbery, MCL 750.529, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to life imprisonment without parole for the felony murder conviction and 10 to 20 years' imprisonment for the armed robbery conviction, to be served concurrently, and a consecutive two-year term of imprisonment for the felony-firearm conviction. We affirm.

## I. FACTUAL BACKGROUND

Defendant's convictions arise from the shooting death of Dimitrios Raptis, whose body was discovered early in the morning on August 17, 2016. The night before, Raptis, a crack-cocaine user, contacted defendant to purchase drugs and then went to Manning Street in Detroit. Raptis's body was discovered on a sidewalk of a nearby street the next morning. He had been shot three times. Defendant, Antonio Jolly, and Antonio Roberson were all charged with felony murder, armed robbery, and felony-firearm in connection with Raptis's shooting death. Jolly and Roberson both later pleaded guilty of armed robbery pursuant to plea agreements whereby they agreed to testify truthfully at defendant's trial.

Roberson, a 16-year-old juvenile at the time of the offense, testified that while Raptis was at a drug house, defendant told him that Raptis was carrying a sum of cash. Roberson waited on the porch of the house next door until Raptis left the drug house and then followed him. Roberson then attacked Raptis, but was unaware that Raptis was trained in marital arts. Raptis fought back, refusing to give Roberson any money. Defendant and Jolly joined Roberson in assaulting Raptis.

-1-

After the three men were able to hold Raptis on the ground, defendant put his hand over Raptis's neck and held a gun on him. While Jolly and Roberson were searching Raptis's pockets, defendant shot Raptis in the pelvis or upper thigh. According to Roberson, he and Jolly ran off, after which he heard two more gunshots.

Jolly also testified at trial, but recanted his prior statements. He admitted that he and Roberson were both involved in robbing Raptis, but denied that defendant was involved. The prosecutor impeached Jolly with his prior testimony and statements in which he said that defendant was involved and was the person who shot Raptis. Jolly admitted making those prior statements, but claimed that he lied.

Another witness, Cornelius Smith, testified that defendant admitted shooting the victim a few days after the offense. Smith was aware that defendant and Roberson had planned to rob the victim. The police recovered a .38-caliber handgun from an abandoned house across the street from the drug house. The police determined that spent ammunition recovered from the scene of the shooting was fired from that weapon. Forensic testing of the handgun revealed the presence of DNA that matched the DNA profile of defendant's uncle.

Defendant testified at trial and denied any involvement in the offense. The defense argued that the DNA evidence supported Jolly's and Roberson's involvement in the offense, but did not prove defendant's involvement.

Defendant now appeals, raising issues through appointed appellate counsel and in a pro se brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4 ("Standard 4 brief").

## I. DEFENDANT'S BRIEF ON APPEAL

### A. ROBERSON'S PRIOR CONSISTENT STATEMENT

Defendant first argues that the trial court erred by allowing the prosecutor to introduce a video recording of a conversation between Roberson and his mother in a police interview room after Roberson's arrest in September 2016. During their conversation, Roberson told his mother that defendant shot the victim. The prosecution offered the recording as a prior consistent statement under MRE 801(d)(1)(B), to rebut defendant's claim that Roberson fabricated his similar trial testimony to take advantage of a favorable plea agreement.

In *People v Katt*, 468 Mich 272, 278; 662 NW2d 12 (2003), this Court explained:

> The decision whether to admit evidence is within a trial court's discretion. This Court reverses it only where there has been an abuse of discretion. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). However, the decision frequently involves a preliminary question of law, such as whether a rule of evidence or statute precludes the admission of the evidence. We review questions of law de novo. *Id.*; *People v Starr*, 457 Mich 490, 494; 577 NW2d 673 (1998). Therefore, when such preliminary questions are at issue, we will find an abuse of

-2-

discretion when a trial court admits evidence that is inadmissible as a matter of law. *Id*.

The trial court overruled defendant's hearsay objection to the challenged evidence and admitted the evidence under MRE 801(d)(1)(B), which provides that a statement is not hearsay if

> [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.

A consistent statement made after the motive to fabricate arose is not admissible under MRE 801(d)(1)(B). *People v McCray*, 245 Mich App 631, 642; 630 NW2d 633 (2001).

The record clearly indicates that Roberson's conversation with his mother was offered to rebut an express or implied charge that Roberson's trial testimony implicating defendant and identifying defendant as the shooter was fabricated, and was the product of improper influence or motive. The defense theory at trial was that Roberson's trial testimony was not credible because it was motivated by a favorable plea offer, which allowed him to plead guilty to the lesser charge of armed robbery and avoid a conviction of murder, and to receive a sentence of only eight years rather than life imprisonment. Indeed, during defense counsel's opening statement, he referred to the plea agreement as a "gift," which gave Roberson a reason to lie about who shot the victim.

Although defendant argues that Roberson had a motive to fabricate at the time he made the statement to his mother, the record shows that when Roberson spoke with his mother, he had not yet been charged. Moreover, the plea offer was not made until approximately a year and a half later. Considering the defense emphasis on the plea agreement as the motivation for Roberson to fabricate his trial testimony, the trial court did not abuse its discretion by allowing the prosecution to rebut that charge by presenting evidence that Roberson had given the same version during a conversation with his mother, which occurred approximately a year and a half before he was offered the plea deal.

## B. JOLLY'S RECANTATION TESTIMONY

Jolly entered into a plea agreement whereby he was allowed to plead guilty to armed robbery in exchange for dismissal of the felony murder and felony-firearm charges and be required to testify truthfully at defendant's trial. When he entered his plea, he stated that defendant participated in the victim's robbery and it was defendant who possessed the gun. At trial, however, Jolly denied that defendant was involved in the offense. Defendant now argues that the prosecutor erroneously introduced Jolly's prior police statements and preliminary examination testimony, which were inconsistent with his trial testimony, to impeach his testimony at trial. We disagree.

Because defendant did not object to the introduction of Jolly's prior inconsistent statements and testimony, this issue is unpreserved. Therefore, we review this issue for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Defendant also argues that defense counsel was ineffective for not objecting to the prior statements and testimony. To establish ineffective assistance of counsel, defendant must show that counsel's

performance fell below an objective standard of reasonableness, and that the representation so prejudiced defendant that he was denied the right to a fair trial. *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). Defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *People v Tommolino,* 187 Mich App 14, 17; 466 NW2d 315 (1991). To establish prejudice, defendant must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *People v Johnson*, 451 Mich 115, 124; 545 NW2d 637 (1996).

Just before he was brought to court to testify at trial, Jolly was held in the same jail cell as defendant for up to four hours, despite the fact that there were orders in place to keep them separate. Soon after Jolly began testifying as a prosecution witness, he changed his earlier statements and testimony and denied that defendant was involved in the offense.

Defendant argues that it was improper to introduce Jolly's prior statements and testimony because the prosecutor should have anticipated that Jolly would recant his earlier testimony and statements. See *People v Standifer*, 425 Mich 543, 558; 390 NW2d 632 (1986) (a prosecutor may impeach a recanting witness's testimony when it is unexpected and harmful to the prosecutor's case, but the prosecutor may not deliberately place a witness on the stand in order to elicit a denial). However, MRE 607 allows the prosecution to impeach its own witness, and MRE 613 allows the prosecution to offer Jolly's prior testimony and statements to impeach Jolly's inconsistent trial testimony.

In support of his argument that the impeachment evidence was improper, defendant relies on *People v Stanaway*, 446 Mich 643; 521 NW2d 557 (1994). In that case, the prosecution called the defendant's nephew to testify regarding an admission the defendant made to his nephew about having sexual relations with the victim. *Id.* at 688-689. After the nephew denied the statement, the prosecutor called a police officer to testify that the nephew told him about the defendant's admission. *Id*. at 689-690. The Court explained that the officer's impeachment testimony was improperly admitted because the only relevance for the nephew's testimony was whether the defendant made the admission to the nephew:

> The only relevance Donald Stanaway's testimony had to this case was whether he made the statement regarding his uncle's alleged admission. The witness had no direct knowledge of any of the alleged incidents and was out of town at the time they would have occurred. While prior inconsistent statements may be used in some circumstances to impeach credibility, MRE 613, this was improper impeachment. The substance of the statement, purportedly used to impeach the credibility of the witness, went to the central issue of the case. Whether the witness could be believed in general was only relevant with respect to whether that specific statement was made. This evidence served the improper purpose of proving the truth of the matter asserted. MRE 801.

> While the prosecutor could have presented defendant's alleged admission by way of the nephew's statement, he could not have delivered it by way of the officer's testimony because the statement would be impermissible hearsay. See *People v Carner*, 117 Mich App 560, 571; 324 NW2d 78 (1982). Likewise, a prosecutor may not use an elicited denial as a springboard for introducing

substantive evidence under the guise of rebutting the denial. *People v Bennett*, 393 Mich 445; 224 NW2d 840 (1975). Here the prosecutor used the elicited denial as a means of introducing a highly prejudicial "admission" that otherwise would have been inadmissible hearsay. The testimony of Officer Peters was that Donald Stanaway said that Brian Stanaway said that he had sex with a young girl. This would have been clearly inadmissible without Donald Stanaway's denial. It is less reliable in the face of the denial. Absent any remaining testimony from the witness for which his credibility was relevant to this case, the impeachment should have been disallowed. [*Stanaway*, 446 Mich at 692-693 (footnotes omitted).]

Comparatively, in *People v Kilbourn*, 454 Mich 677; 563 NW2d 669 (1997), our Supreme Court declined to apply the rule from *Stanaway* regarding impeachment of a witness in that case. In *Kilbourn*, the McNamaras, who were the Kilbourns' neighbors, observed several people fighting at the Kilbourns' residence and called the police. Soon after the police responded, but did not make any arrests, Mrs. McNamara received a threatening telephone call from Robert Kilbourn, Sr. That same evening, shots were fired into the McNamaras' home and an ax handle was used to break a kitchen window. Kilbourn's son was charged with two counts of assault with intent to cause great bodily harm. *Id*. at 678-679.

At trial, Kilbourn was called as a witness and described what occurred at his property before the police were initially called. He admitted calling Mrs. McNamara to ask her to first call him in the future before contacting the police. However, he denied threatening Mrs. McNamara and claimed that she became irate with him. Kilbourn could not recall if he discussed that call with any of his sons, including the defendant. *Id*. at 680. The prosecutor asked Kilbourn if he recalled telling a detective that the defendant was responsible for the shooting, which Kilbourn denied. *Id*. The prosecutor then called the detective who spoke to Kilbourn and he testified that Kilbourn told him that the defendant was the person who shot into the McNamaras' house. *Id*. at 680-681.

This Court followed *Stanaway* and held that it was improper for the prosecutor to impeach Kilbourn with the officer's testimony regarding Kilbourn's prior inconsistent statement because that statement was hearsay and the prosecutor elicited Kilbourn's denial of the purported statement. However, our Supreme Court held that this Court misapplied the rule from *Stanaway* to the facts. *Kilbourn*, 454 Mich at 682. The Court explained:

Under the current provision of MRE 607 the government can impeach its own witness. The general rule is that evidence of a prior inconsistent statement of the witness may be admitted to impeach a witness even though the statement tends directly to inculpate the defendant. *United States v Miller*, 664 F2d 94 (CA 5, 1981). *People v Stanaway* provided an exception to this rule: A prosecutor cannot use a statement that directly tends to inculpate the defendant under the guise of impeachment when there is no other testimony from the witness for which his credibility is relevant to the case.

In *People v Stanaway*, the defendant was charged with three counts of third-degree criminal sexual conduct, MCL 750.520d(1)(a) . . . , involving sexual intercourse with the complainant when she was fourteen years old. During the

prosecution's case in chief, Stanaway's nephew was called to testify. When asked by the prosecutor if he had made a statement to Officer Peters regarding an incriminating statement Stanaway had made to the witness, the witness denied ever having made such a statement. The prosecution then called Officer Peters to the stand. The officer testified, over hearsay objections, that the nephew told the officer that Stanaway had said he had had sexual relations with a young girl and would be in a lot of trouble if caught. This Court held that the prior inconsistent statements could not be used to impeach credibility under MRE 613. The reasoning behind this is that the witness had no direct knowledge of any of the alleged incidents and was out of town at the time the incident would have occurred.

The rule set forth in *People v Stanaway* is that the impeachment should be disallowed when (1) the substance of the statement purportedly used to impeach the credibility of the witness is relevant to the central issue of the case, and (2) there is no other testimony from the witness for which his credibility was relevant to the case.

This is a very narrow rule and does not apply in the instant case. Although the substance of the statements used to impeach the credibility of the witness were indeed relevant to a central issue of the case, the second prong of the test was not met because there was other relevant testimony from the witness for which his credibility was relevant. Robert Kilbourn, Sr., testified about a number of events that took place before the shooting, and indeed was a key actor in some of these events.

The facts here are distinguishable from the situation in *People v Ince*, 21 F3d 576 (CA 4, 1994). In *People v Ince*, the court held that the probative value of the contradicting witness' testimony for impeachment value was "nil." The court noted in *Ince* that the witness' in-court testimony did not affirmatively damage the government's case, and the prosecution had no need to attack her credibility. *Id*. at 581.

Here, there was at least one direct conflict between Mr. Kilbourn's testimony at trial and that of another witness. Mr. Kilbourn testified that when he phoned Mrs. McNamara he only asked the McNamaras to contact him before calling the police, and that he made no threats. Mrs. McNamara, on the other hand, testified that Mr. Kilbourn had made a threatening phone call to her. We find that the officer's testimony was admissible, because it could properly be used to impeach the credibility of Mr. Kilbourn. [*Kilbourn*, 454 Mich at 682-684 (footnote omitted).]

Turning to the instant case, Jolly admitted being an active participant in the charged offense. He was called as a witness to testify regarding his knowledge of the offense, including whether defendant was involved and the identity of the shooter, which were central issues in the case. This scenario falls within the rule from *Kilbourn*, not *Stanaway*. As an admitted participant who had knowledge about the offense, Jolly's credibility was clearly relevant to the case. There were conflicts between Jolly's testimony and Roberson's testimony regarding whether defendant

participated in the offense and whether defendant was the shooter. There were also conflicts between Jolly's testimony and testimony from other witnesses regarding whether Jolly was held in the same jail cell with defendant just before he testified, whether Jolly spoke with Smith about the robbery, whether defendant had twin uncles, and whether defendant used his uncle's telephone or Jolly's phone when talking to Raptis about the sale of drugs. Because there was other testimony for which Jolly's credibility was relevant, the prosecutor was permitted to offer Jolly's prior inconsistent statements and testimony to impeach his credibility at trial, including statements that tended directly to inculpate defendant. *Kilbourn*, 454 Mich at 682. Further, because the prior inconsistent statements were admissible, any objection by defense counsel would have been futile. Counsel is not ineffective for failing to make a futile objection. *People v Green*, 322 Mich App 676, 687; 913 NW2d 385 (2018).

Defendant also appears to argue that although the prosecutor could properly argue that the jury could consider Jolly's prior inconsistent preliminary examination testimony as substantive evidence, the trial court failed to clarify in its jury instructions that the jury could not consider Jolly's prior inconsistent police statements as substantive evidence. At trial, the prosecutor introduced evidence of both Jolly's prior inconsistent police statements and his prior inconsistent preliminary examination testimony. Although the inconsistent police statements could not be considered as substantive evidence, because Jolly's preliminary examination testimony was made under oath and he was subject to cross-examination, the testimony was admissible as substantive evidence under MRE 801(d)(1)(A).

The trial court instructed the jury as follows:

If you believe that a witness previously made a statement inconsistent with his or her testimony at this trial, the only purpose for which that earlier statement can be considered by you is in deciding whether the witness testified truthfully in court. The earlier statement is not evidence that what the witness said earlier is true.

Evidence has been offered that one or more of the witnesses in this case previously made statements inconsistent with their testimony at this trial. You may consider such earlier statements in deciding whether the testimony at this trial was truthful and in determing [sic] the facts of the case.

The trial court's instructions allowed the jury to consider Jolly's prior testimony as substantive evidence. To the extent that the court's instructions failed to distinguish between Jolly's prior inconsistent police statements and prior inconsistent testimony under oath, defendant has not demonstrated that his substantial rights were affected because (1) it is undisputed that Jolly gave prior testimony under oath that properly could be considered as substantive evidence, (2) defendant does not explain how Jolly's prior inconsistent police statements materially differed from his prior inconsistent preliminary examination testimony, and (3) defendant has not identified any part of the prosecutor's closing argument that misrepresented which of Jolly's prior inconsistent statements could be considered as substantive evidence. Further, because Jolly's statements under oath properly could be considered as substantive evidence, and defendant has not identified any portion of the prosecutor's closing argument that misrepresented which of Jolly's prior inconsistent statements could be considered as substantive evidence, there is no basis for

-7-

concluding that defense counsel was ineffective for failing to object to the prosecutor's closing argument.

## II. DEFENDANT'S STANDARD 4 BRIEF ON APPEAL

### A. JUDICIAL ERROR OR MISCONDUCT

Defendant argues that he was denied a fair trial because of judicial misconduct that pierced the veil of judicial impartiality. Although defendant frames this issue as one of judicial misconduct, he only challenges the trial court's legal rulings. He does not argue that the trial court's conduct created an "appearance of advocacy or partiality against a party." See *People v Stevens*, 498 Mich 162, 171; 869 NW2d 233 (2015). His claims of judicial misconduct are more properly characterized as claims of judicial error. Further, to the extent that defendant did not object at trial to the rulings that he challenges on appeal, our review is limited to plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764.

Defendant first argues that the trial court erred by not ordering that Roberson and Jolly, who were serving sentences with the Department of Corrections, both continue to be held in the county jail after they testified, should defendant want to recall either of them. We disagree.

After Roberson finished testifying, defense counsel asked that he continued to be held in the local jail should counsel wish to recall him. The trial court denied the request and released Roberson to the Department of the Corrections. Defense counsel made a similar request after Jolly finished testifying. The court agreed to hold Jolly overnight should defendant want to recall him, but defendant never did so.

The record does not support defendant's argument that the trial court erred by releasing Roberson to the Department of Corrections after he finished testifying. Defense counsel did not offer any reason for needing to recall Roberson other than "one never knows." Although defendant argues that the trial court's ruling deprived him of his right to confront his accusers, that argument is without merit because defendant was afforded the opportunity to cross-examine both witnesses at trial. Moreover, both witnesses had previously testified at the preliminary examination, so defense counsel should have been prepared for their testimony. Under these circumstances, and because defendant was unable to provide any particularized need to recall either witness, the trial court did not err by releasing the witnesses to the Department of Corrections.

Within this issue, defendant also again challenges the admissibility of Roberson's prior statement to his mother. As explained earlier, the trial court did not abuse its discretion by allowing that evidence. Also, defense counsel was allowed to cross-examine Roberson about his prior statement during Roberson's testimony. Defendant also questions whether Roberson's statement to his mother was voluntarily made, but because the statement was not the product of police questioning, it was not subject to exclusion as an involuntary confession or statement. See *People v Reed*, 393 Mich 342, 355-356; 224 NW2d 867 (1975)

Defendant also claims that the trial court erred by instructing the jury on aiding or abetting, but he does not explain why the instruction was improper or did not apply. Based on defendant's citation to the record, he appears to be challenging the trial court's decision not to give an

instruction on "mere presence" as part of the aiding or abetting instructions. The trial court declined to give that instruction because the evidence did not support it.

The standard instruction on aiding or abetting does not include a "mere presence" element. See M Crim JI 8.1. The mere presence instruction is found at M Crim JI 8.5. The prosecution's witnesses testified that defendant was an active participant in the offense. Conversely, defendant and Jolly testified that defendant was not involved or present. Thus, there was no factual basis for concluding that defendant was present during the offense, but did not participate. A trial court is not required to give a requested instruction that is not supported by the evidence. *People v Mills*, 450 Mich 61, 81; 537 NW2d 909 (1995), modified 450 Mich 1212 (1995). Because there was no evidence to support a jury finding that defendant was present, but did not participate in the offense, the trial court did not err by declining to give the mere presence instruction.

### B. PROSECUTORIAL MISCONDUCT

Next, defendant argues that the prosecutor's conduct denied him a fair trial. Because defendant did not object at trial to any of the conduct that he now challenges on appeal, these claims are unpreserved. Review of an unpreserved claim of prosecutorial misconduct "is limited to whether plain error affecting substantial rights occurred." *People v Abraham,* 256 Mich App 265, 274-275; 662 NW2d 836 (2003). This Court will not reverse if the prejudicial effect of the prosecutor's conduct could have been cured by a timely instruction from the trial court. *People v Williams,* 265 Mich App 68, 70-71; 692 NW2d 722 (2005), aff'd 475 Mich 101 (2006).

Claims of prosecutorial misconduct are decided case by case and the challenged conduct must be viewed in context. *People v McElhaney*, 215 Mich App 269, 283; 545 NW2d 18 (1996). The test for prosecutorial misconduct is whether defendant was denied a fair trial. *People v Bahoda*, 448 Mich 261, 266-267; 531 NW2d 659 (1995). Defendant argues that the prosecutor made several statements during closing argument that were not supported by the evidence, and also improperly vouched for Smith's credibility. We disagree.

A prosecutor is afforded great latitude during closing argument. A prosecutor may not make a statement of fact that is unsupported by the evidence, but he is permitted to argue the evidence and reasonable inferences arising from the evidence in support of his theory of the case. *Bahoda,* 448 Mich at 282; *People v Ackerman,* 257 Mich App 434, 450; 669 NW2d 818 (2003). A prosecutor is not required to phrase his or her arguments in the blandest of terms, but may use "hard language" when the evidence supports it. *Bahoda,* 448 Mich at 282; *People v Ullah*, 216 Mich App 669, 678; 550 NW2d 568 (1996). It is improper for a prosecutor to express personal knowledge or a personal belief regarding the credibility of a witness, or to vouch for the credibility of a witness by implying some special knowledge about the witness's truthfulness. *Bahoda,* 448 Mich at 276; *People v Meissner,* 294 Mich App 438, 456; 812 NW2d 37 (2011); *People v Thomas,* 260 Mich App 450, 455; 678 NW2d 631 (2004). But a prosecutor may comment on a witness's credibility and argue from the evidence that a witness is credible. *Id.*

The prosecutor did not misstate the evidence when he stated that it was undisputed that defendant had received a telephone call from Raptis to purchase drugs. Defendant admitted that he borrowed his uncle's phone and phone records showed that Raptis called his uncle's number. Defendant also admitted selling drugs to Raptis, but he could not remember if he sold the drugs

on the night of the offense or the previous night. Even though defendant was unsure of the date when he last sold drugs to Raptis, it was undisputed that Raptis was in the area to purchase drugs just before he was robbed and shot, and it was also undisputed that Raptis called the telephone that defendant admitted using that night. Accordingly, there was no plain error.

The evidence also supported the prosecutor's argument that defendant spoke to Roberson on the night Raptis was robbed, and that Roberson understood that defendant was telling him to rob Raptis when defendant remarked "there's money on the floor" while Raptis was present at the house to purchase drugs. Roberson admitted that defendant did not directly tell him to rob the victim or take his money, but Roberson also denied that it was his idea to rob the victim and he testified that he understood what defendant meant by his statement—that he should take the victim's money. Accordingly, the prosecutor's argument was not improper.

We also reject defendant's argument that the prosecutor improperly argued that defendant could be connected to the murder weapon because defendant sold drugs across the street from the vacant house where the weapon was found. Defendant testified that he was familiar with the particular handgun because it was used by persons who sold drugs in the area, and the evidence showed that defendant sold drugs in that area. Defendant also admitted that he had previously handled the gun. Given this evidence, the prosecutor's argument was not improper.

Defendant also claims that the prosecutor improperly argued that the DNA evidence proved that defendant touched the murder weapon, even though defendant's DNA was not found on the weapon. Defendant misconstrues the prosecutor's argument. The defense argued that the absence of defendant's DNA on the gun proved that he did not shoot the victim. However, DNA associated with defendant's uncle was found on the gun's trigger, but not on the handle. The prosecutor used this evidence to explain that the lack of defendant's DNA did not prove that he could not have touched the gun, as the defense claimed. Again, defendant has not demonstrated that the prosecutor's argument was improper.

Defendant also argues that the prosecutor erroneously stated that Roberson identified the shooter as defendant in his conversation with his mother. Defendant notes that during that conversion, Roberson identified the shooter as "Poo" or "Pooh," whereas defendant's nickname was "Pookie." It was reasonable for the prosecutor to infer that "Poo" or "Pooh" was a shorthand reference to "Pookie," which was defendant's nickname, and therefore, Roberson was implicating defendant in his statement.

Defendant next argues that the prosecutor improperly theorized that defendant sold drugs to the victim, given that Jolly was also selling drugs on Manning Street just before the robbery and shooting. Defendant argues that his connection to selling drugs was then used to show that he had access to the gun that was used to shoot the victim. Given Roberson's testimony, as well as defendant's own testimony, there was ample evidence that defendant had access to the gun used in the shooting, which was used by persons who sold drugs. Roberson also testified that defendant informed him that the victim had money because defendant had sold drugs to the victim on the night of the robbery. While Smith testified that he referred Raptis to Jolly to purchase drugs, because there was other evidence supporting the prosecutor's theory that it was defendant who sold the drugs, and then planned and participated in the robbery with Roberson and Jolly, the prosecutor's argument was not improper.

Defendant also argues that the prosecutor improperly argued that defendant's contact with Jolly just before Jolly testified explained why Jolly recanted his earlier testimony. Although defendant argues that the prosecutor played on the jury's emotions by suggesting that defendant was a dangerous person, the prosecutor merely asked the jury to consider the circumstances of Jolly's confinement with defendant in jail to determine if it explained why Jolly recanted his prior statements and testimony. The prosecutor's remarks were properly based on the evidence and reasonable inferences arising therefrom.

Defendant next argues that the prosecutor misrepresented the testimony of the DNA expert when cross-examining defendant. However, defendant made it apparent that he disagreed with the prosecutor's question. Thus, there is no reason to conclude that the question improperly influenced the jury. Moreover, the trial court instructed the jury that "[t]he lawyers' statements and arguments are not evidence," "[y]ou should only accept things the lawyers say that are supported by the evidence," and that "[t]he lawyers' questions to the witnesses . . . also are not evidence." These instructions were sufficient to protect defendant's substantial rights.

Finally, we reject defendant's argument that the prosecutor improperly vouched for Smith's credibility. The prosecutor did not suggest that he had some special knowledge that Smith's testimony was truthful. Rather, the prosecutor's remarks were based on the evidence and reasonable inference drawn therefrom, which the prosecutor properly could argue showed that Smith was credible. *Thomas*, 260 Mich App at 455.

In sum, defendant has not demonstrated that any of the challenged comments or conduct by the prosecutor were improper.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that he did not receive the effective assistance of counsel at trial. Because defendant did not raise this issue in an appropriate motion or request for an evidentiary hearing in the trial court, our review is limited to errors apparent from the record. *People v Matuszak,* 263 Mich App 42, 48; 687 NW2d 342 (2004).

Defendant first complains that defense counsel did not call defendant's uncle to question him about his cell phone. Decisions regarding what evidence to present and whether to call witnesses are presumed to be matters of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Counsel's failure to a call a witness is only considered ineffective assistance if it deprives the defendant of a substantial defense. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). A substantial defense is one that could have affected the outcome of the trial. *People v Daniel*, 207 Mich App 47, 58; 523 NW2d 830 (1994). Defendant presumably believes that his uncle would have testified that the victim called defendant's uncle on the night of the offense, not defendant. However, defendant has not provided any evidence or other offer of proof showing what testimony his uncle would have provided. Without an appropriate offer of proof, defendant cannot demonstrate that counsel's failure to call defendant's uncle deprived defendant of a substantial defense.

Next, defendant argues that counsel was ineffective for not producing telephone records to verify whether defendant and Roberson discussed that the victim had cash on him when he arrived

to purchase drugs. According to Roberson, this conversation occurred when he was outside the house where defendant sold drugs, and where Roberson had just purchased marijuana. Because the testimony indicated that this conversation took place in person, there was no reason for counsel to request any telephone records.

Defendant also complains that defense counsel allowed the prosecutor to argue that only defendant was selling drugs on the night of the offense and thus only he would have had access to the communal gun used by the drug dealers in the area. As discussed earlier, Roberson's testimony and defendant's testimony provided ample support for a finding that defendant had access to the gun that was commercially used by the persons who sold drugs. Roberson testified that defendant informed him that the victim had money because defendant had sold drugs to the victim that night. While Smith testified that he referred Raptis to Jolly to purchase drugs, there was other evidence that supported the prosecutor's theory that it was defendant who sold the drugs, planned the robbery of Raptis, and then participated in the offense with Roberson and Jolly. Defendant has not identified a legal basis on which counsel could have objected to Roberson's account to allow the jury to find that only Jolly sold drugs. To the extent that there was conflicting testimony regarding who sold drugs on the night of the offense, it was up to the jury to resolve that conflict. It would have been futile for counsel to object merely because defendant disagreed with some of the testimony presented. Counsel was not ineffective for failing to make a futile objection. *People v Knapp,* 244 Mich App 361, 386; 624 NW2d 227 (2001).

Defendant also argues that defense counsel was ineffective for not objecting to the prosecutor's arguments discussed *supra*. We have concluded, however, that the prosecutor's arguments were not improper. Therefore, counsel was not ineffective for failing to object. Any objection would have been futile. *Id.*

Defendant also claims that defense counsel was ineffective for requesting a jury instruction on aiding or abetting. According to defendant, counsel "snuck" that instruction in after the trial court had refused to give the instruction. The record does not support this argument. The trial court ruled that it intended to instruct the jury on aiding or abetting, but declined defense counsel's request to give an instruction on mere presence because the evidence did not support it. Although defense counsel requested the mere presence instruction, he did not ask the court to instruct the jury on aiding or abetting. The record does not support defendant's claim that the instruction was given at defense counsel's request.

Finally, defendant complains that defense counsel's trial strategy was ineffective because counsel did not focus on Smith or Jolly as the suspects in this shooting. The record before us does not support this claim. During closing argument, counsel noted the inconsistences in the witness testimony, but highlighted that the evidence established Jolly's presence at the scene because he left a flip-flop there with his DNA on it, whereas there was no evidence that defendant's DNA was at the scene. Counsel further argued that Smith was related to Jolly, it was Smith who "actually starts everything here," and Smith was "going to protect Jolly" and "[t]hat's exactly what he did." Defendant does not explain what counsel should have done differently, or what other evidence he should have presented.

Affirmed.

/s/ Kathleen Jansen
/s/ Patrick M. Meter
/s/ Thomas C. Cameron